# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| David Anthony Dean,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-12-0534-PHX-DGC (JFM)<br>**Report & Recommendation On Petition For Writ Of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 13, 2012 (Doc. 1), supplemented by three addendums (Docs. 27, 28 and 29). On July 11, 2012, Respondents filed their Answer (Doc. 30). Petitioner filed an Amended Traverse on August 21, 2012 (Doc. 69), supplemented by Addendums filed August 21, 2012 (Doc. 46) and January 7, 2013 (Doc. 85).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

On December 10, 2005, over a period of more than three hours, Petitioner repeatedly drove slowly past the victim's residence, staring at the victim who was doing yard work. Eventually, Petitioner fired three shots at the victim, who fled inside and

called police. The victim and neighbors provided descriptions of the vehicle and Petitioner. Officers discovered bullet holes in the victim's truck.

Later that same day, Petitioner's brother, who lived across the street, reported that Petitioner had stolen a gun from his home that Petitioner had previously given him. He reported that that he had previously alerted authorities that he believed his brother had been involved in a different drive by shooting in the area, and that he believed Petitioner was involved in the shooting at the neighbor's home. He related that Petitioner was angry at his family because they had him committed to a mental health facility in California for evaluation. He advised that Petitioner was headed back to California.

Petitioner was arrested two days later in California, in connection with the investigation of a drive by shooting there. Petitioner admitted to taking the gun, but claimed he was the true owner. He admitted to shooting at the neighbor who he believed to be having an affair with his brother's wife, but claimed he believed the gun was loaded with blanks.

The shooting victim identified Petitioner from a photographic line-up. (Exhibit B, Presence Report at 1-3.) (Exhibits to the Answer, Doc. 30, are referenced herein as "Exhibit ___.")

**B. PROCEEDINGS AT TRIAL**

On July 6, 2006, Petitioner was indicted in the Pinal County Superior Court, in case number CR200601144, on charges of: (1) drive by shooting; (2) aggravated assault; (3) burglary; (4) theft; and (5) criminal damage. (Exhibit A, Indictment.) Counsel was appointed and eventually[1] moved (with the consent of the State) for a Rule 11 evaluation for competency to stand trial and sanity at the time of the offense. (Exhibit C, Motion.)

The parties eventually stipulated that Petitioner was not competent to stand trial, and on July 8, 2008, the court ordered Petitioner committed to the Arizona State Hospital

---

[1] In the interim, Petitioner had been prosecuted in California, paroled on March 21, 2007, and he absconded from parole in January, 2008. (Exhibit B, Presentence Report at 4.)

2

for restoration of competency. (Exhibit D, M.E. 7/8/2008.) A series of reports were submitted from the Arizona State Hospital (Exhibits O, P, and Q). A review hearing was conducted on January 30, 2009 (Exhibit E, M.E. 1/30/09), and on February 17, 2009, Petitioner was found competent to stand trial. Because the relationship with trial counsel had deteriorated, new counsel was appointed (Exhibit F, M.E. 2/17/09).

On August 13, 2009, Petitioner entered into a written Plea Agreement (Exhibit H), wherein he agreed to plead guilty to the drive by shooting and aggravated assault charges, in exchange for dismissal of the other charges, and a stipulated mitigated term of 7 years on the drive by shooting, and consecutive probation on the aggravated assault.

Petitioner appeared for sentencing on September 14, 2009, and was sentenced to seven years in prison on the drive by shooting and a consecutive five year probation term on the aggravated assault. (Exhibit I, Sentence.)

## C. PROCEEDINGS ON DIRECT APPEAL

Petitioner did not file a direct appeal. (Petition, Doc. 1 at 1; Exhibit N, Docket.)

## D. PROCEEDINGS ON POST-CONVICTION RELIEF

On January 11, 2011, Petitioner filed a "Pro Nun Tunc Motion" (Exhibit J), moving to correct his sentence on the basis that he was entitled to time served credits for time in custody in California with an Arizona hold placed on him. The court denied the motion, finding that Petitioner was not entitled to credit for time served until he was in the custody of the Pinal County authorities. (Exhibit L, Order 1/26/11.)

On February 8, 2011, Petitioner filed an "Amended Pro Nun Tunc Motion" (Exhibit M), again seeking additional credit for time served. In addition, a series of additional motions and "requests" have been filed with the trial court. (Exhibit N, Docket.) The motions were denied. (Addendums, Doc. 46, M.E. 2/18/11.)

//
//

**E. PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 13, 2012 (Doc. 1). Petitioner's Petition raised a variety of allegations concerning his California conviction, but the Court found that it asserts a single ground for relief: "that he did not voluntarily enter into his plea agreement." (Order 4/27/12, Doc. 11 at 2.) The Court ordered all other grounds for relief dismissed. (*Id.*)

Petitioner has supplemented his Petition with: (1) a "Notice of Lodgement," filed June 20, 2012 (Doc. 27), consisting of various exhibits from Petitioner's California prosecution, and the instant prosecution; (2) an "Amendment to the Lodgement of Exhibits" (Doc. 28), correcting the number of identified pages in the Notice of Lodgement (Doc. 27); and (3) a second "Notice of Lodgement" (Doc. 29), asserting that his extradition was contested, and therefore the dismissal of his challenges to the California was improper.

**Response** - On July 11, 2012, Respondents filed their Response ("Answer") (Doc. 30). Respondents argue that the Petition is barred by the statute of limitations, Petitioner's state remedies on his claim were not properly exhausted and are now procedurally defaulted, and the claim is without merit.

**Reply And Other Filings** – Petitioner proceeded to make a series of filings (Docs. 27, 28, 29, and 31). On July 19, 2012, Petitioner filed his original Travers (Doc. 32). He then continued to make a number of other filings (Docs. 34, 35, 36, 37, 38, 39, 40, and 41.) The Court found a number of the filings to be attempts at serial amendments to the Traverse, and struck them. Petitioner was advised that the matter would be resolved on the basis of: Petition (Doc. 1); "Notice of Lodgement" (Doc. 27); "Notice of Errata" (Doc. 28); "Notice of Lodgement" (Doc. 29); Response (Doc. 30); and the original Traverse (Doc. 32). Petitioner was, however, given leave to file a motion to amend his traverse. The Court observed that under the applicable rules, "No provision is made for serial amendments or supplements." (Order 8/7/12, Doc. 42 at 2.)

Petitioner was cautioned: "No further amendments to the Petition or Traverse will be permitted in the absence of a showing of exceptional circumstances and excusable neglect." (*Id.* at 3.)

Petitioner eventually filed a motion (Doc. 44) to file his amended traverse, which was granted (Doc. 68). Petitioner's Amended Traverse (Doc. 69) was filed October 11, 2012, together with the original Attachments (Doc. 46) to the proposed traverse. The Court noted (Doc. 84) that page 5 had been omitted from the Amended Traverse, and on January 7, 2013, Petitioner filed the omitted page (Doc. 85).

Petitioner has proceeded to file a flurry of other documents, including various Declarations (Docs. 54, 55, 63, 65, 76, 77, 79), Additional Attachments (Docs. 56, 60), and various Notices (Docs. 61, 62, 64, 66, 67, 70, 72, 73, 74, 75, 78, 80, 81, 82, 83 and 86).[2] These additional documents are not motions, and in light of the warnings provided to Petitioner, are not considered in connection with the Petition.

Petitioner's Amended Traverse (Doc. 69) argues that various prior rulings of this Court have been incorrect or improper, and/or ignored until Petitioner mailed copies to Chief Justice Roberts of the United States Supreme Court. Petitioner especially complains about the Court's dismissal of various claims, and the refusal to allow him to conduct discovery. (Doc. 68 at 1-4, 12-14.) Petitioner argues that to dismiss his claims as procedurally defaulted "would result in a major fundamental miscarriage of justice" because he has been harmed by the denial of his constitutional rights. (*Id.* at 4.) Petitioner attacks his extradition, his purported factual discrepancies in the police reports and presentence report, the sufficiency of the indictment, the failure of counsel to file a

---

[2] These filings are largely irrelevant to the issues addressed herein. *See e.g.* Doc. 54 (disputing alleged aggravating circumstances), 55 (chronicling and opposing competency proceedings at trial), 56 (additional trial records), 60 (same), 61 (terrorists at Guantanamo Bay), 62 (complaint about limited response), 63 (demand for relief on dismissed habeas petition), 64 (complaint about Dick Cheney), 65(loss of habeas rights after September 11, 2001), 66 (loss of law library), 67 (economy and budget), 70 (sanctions), 72 (attack on Libya), 73 (resignation of Petraeus), 74 (political issues), 75 (relationship between Petitioner's cases), 76 (suggestions to Congress), 77 (obligation to uphold the Constitution), 78 (Respondents' failure to answer), 79 (sexual harassment), 80 (Court's failings), 81 ("Don't Ask Don't Tell"), 82 ("Florida/Oil/Bush"), 83 (Respondents' failure to answer), and 86 (discussing budget deficits).

motion to dismiss in 2007, and the impropriety of the process finding him incompetent and restoring him to competence. (*Id.* at 6-9.) Petitioner argues his plea was involuntary because he accepted it only to be freed from the competency restoration process. (*Id.* at 9.) He asserts that he filed motions with the trial court to correct his sentence on February 18, 2011, March 22, 2011, and August 25, 2011, and dropped the matter in a motion filed December 30, 2011. (*Id.*) Petitioner argues he was kidnapped and tortured when he was extradited to Arizona. (*Id* at 10.) Petitioner argues that his Petition was timely, and that equitable tolling should be granted because the AEDPA statute of limitations was an unconstitutional response to terrorist attacks on September 11, 2001, resulting in an improper suspension of habeas. (*Id.*at 10-12.) Finally, Plaintiff argues that he has been off medication since arriving at the Arizona Department of Corrections in 2009, and yet has remained competent. (*Id.* at 15.)

### III. APPLICATION OF LAW TO FACTS

**A. TIMELINESS**

**1. One Year Limitations Period**

Respondents assert that Petitioner's Petition is untimely. As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts. 28 U.S.C. § 2244(d). Petitions filed beyond the one year limitations period are barred and must be dismissed. *Id.*

**2. Commencement of Limitations Period**

**Finality** - The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or

the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[3]

For Arizona pleading defendants, their opportunity for direct review is an Arizona Rule 32 of-right post conviction relief proceeding. *Summers v. Schriro*, 481 F.3d 710 (9th Cir. 2007). "Arizona's Rule 32 of-right proceeding for plea-convicted defendants is a form of direct review within the meaning of 28 U.S.C. § 2244(d)(1)(A)." *Summers v. Schriro,* 481 F.3d 710, 717 (9th Cir. 2007). "To bring an of-right proceeding under Rule 32, a plea-convicted defendant must provide to the Arizona Superior Court, within 90 days of conviction and sentencing in that court, notice of his or her intent to file a Petition for Post-Conviction Review." *Id.* at 715 (citing Ariz. R.Crim. P. 32.4(a)).

In addition, it is well established in the Ninth Circuit that for purposes of 28 U.S.C. § 2244, "direct review" includes the period within which a petition for a writ of certiorari from the United States Supreme Court is pending or could be sought. *See Bowen v. Roe*, 188 F.3d 1157, 1158 (9th Cir. 1999). However, certiorari review with the U.S. Supreme Court may only be sought following a decision or denial of discretionary review by the state court of last resort, i.e. the Arizona Supreme Court. *Flynt vs. Ohio*, 451 U.S. 619 (1981). Accordingly, the time for seeking a writ of certiorari with the U.S. Supreme Court cannot be considered in determining when Petitioner's judgment became final when review by the state court of last resort was not sought. *Eisermann vs. Penarosa*, 33 F. Supp. 2d 1269 (D. Hawaii 1999). *See* 28 U.S.C. § 1257 (certiorari jurisdiction limited to highest available state court); Sup. Ct. Rule 13 (timeliness from decision of highest state court). *See also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004) ("If a criminal defendant has pursued his direct appeal through the highest state court, then this period includes the 90 days for filing a petition for certiorari to the Supreme Court. If not, then it includes the time for seeking further state-court direct review.")

---

[3] The statute provides for later commencement of the one year when the facts supporting the claim are newly discovered or there has been a retroactive change in the law. *See* 28 U.S.C. § 2244(d)(1). The undersigned finds nothing in the record to suggest either of these might apply.

7

Here, Petitioner was sentenced on September 14, 2009. (Exhibit I, Senence.)

Petitioner did not file a direct appeal or a PCR petition of right. Indeed, the first post-conviction filing he made was his "Pro Nun Tunc Motion" (Exhibit J), filed January 11, 2011, long after the expiration of the time for an "of right" PCR petition. Accordingly, excluding any time for certiorari review, Petitioner's conviction became final 90 days after his sentence, or after December 14, 2009, when his time to file an "of right" PCR petition expired.

Further, having not sought direct review of his conviction, and having not sought review by the Arizona appellate courts, Petitioner had no right seek certiorari review by the U.S. Supreme Court.

Accordingly, Petitioner's conviction was final and his one year limitations period began running on December 15, 2009.

### 3. Statutory Tolling

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Such tolling only results from state applications that are "properly filed," and an untimely application is never "properly filed" within the meaning of § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).

Here, Petitioner had no state application pending during the time his one year was running, e.g. December 15, 2009 through December 14, 2010. Indeed, his first state court application following his sentence was his January 11, 2011 motion to correct his sentence. (Exhibit J, Motion; Exhibit N, Docket.) Once the habeas statute has run, a subsequent post-conviction or collateral relief filing does not reset the running of the one year statute. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001).

Accordingly, Petitioner is not entitled to any statutory tolling, and his one year expired on December 14, 2010.

### 4. Timeliness of Petition

Here Petitioner's Petition (Doc. 1) was filed on March 12, 2012. Under the prison mailbox rule, filings are deemed "filed" at the time they are delivered to prison officials for mailing. *See Stillman v. LaMarque*, 319 F.3d 1199 (9th Cir. 2003). Because it does not affect the outcome, the undersigned presumes that the prison mailbox rule applies and that Petitioner delivered his petition to prison officials for mailing on the date he signed the Petition, March 11, 2012. (*See* Petition, Doc. 1 at 9.) At that time, Petitioner's one year had been expired for almost 15 months.

Accordingly, Petitioner's petition is untimely.

### 5. Equitable Tolling

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'" *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.).

Here, Petitioner makes no argument that he is entitled to equitable tolling.

The undersigned takes note of the fact that, despite his protestations to the contrary, Petitioner suffers substantially from mental illness. His mental illness is well documented in the competency proceedings at trial, and has even been evident in his

filings in this action. For example, Petitioner's arguments have, with some frequency, little to do with what even most *pro se* prisoner litigants would consider to be relevant issues. They also reflect patterns of repetition and hyperbole that is common in the filings of those suffering from mental illness.

At the same time, Petitioner has demonstrated that he is well capable of instigating and maintaining litigation. Petitioner filed a series of motions in the state court in early 2011. At least those provided to this Court are well reasoned and articulated, although not effective. (*See* Exhibits J and M.) Although these were filed after his one year had expired, it was only shortly after. Petitioner had been adjudicated by the state court as competent in February, 2009, and apparently continued competent through sentencing In September 2009. Although this was three months prior to the time his one year habeas limitations period began running, it provides an implication that Petitioner remained sufficiently mentally capable that he could have filed during his one year limitations period the same Petition he eventually filed in March 2012.

Petitioner argues in his Amended Traverse that he has not received his medication since arriving in prison. (Doc. 69 at 15.) Presumably this refers to psychotropic medication. Petitioner maintains that despite the lack of medication, he has remained competent. (*Id.*) In light of his medical history, it seems likely to the undersigned that being taken off his medication (assuming such occurred) would have caused Petitioner's mental condition to deteriorate to some degree. Again, however, Petitioner's filings in the State court and this action suggest that despite the deterioration, Petitioner remained capable of pursuing review of his incarceration during the relevant time, from December 15, 2009 through December 14, 2010.

### 6. Actual Innocence

The Ninth Circuit has concluded that the statute of limitations is subject to an exception for claims of actual innocence. *Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011). Petitioner makes no such claim in this proceeding.

**7. Summary**

Petitioner's conviction became final on conclusion of direct review on December 14, 2009, on the expiration of his time to file an "of right" PCR proceeding. The limitations period began running thereafter and expired one year later, on December 14, 2010. Petitioner's state proceedings after its expiration do not revive the expired period. Nor do his assertions of equitable tolling show any circumstance existing during the limitations period that would have precluded a timely filing, thereby justifying equitable tolling.

Based on the foregoing, the undersigned concludes that Petitioner's Petition is barred by the statute of limitations.

**B. OTHER DEFENSES**

Respondents argue procedural default, and that the Petition is without merit. Because the undersigned finds the Petition plainly barred by the statute of limitations, these defenses are not reached.

### IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling." Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed March 13, 2012 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability be **DENIED.**

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: January 11, 2013

James F. Metcalf
United States Magistrate Judge

12-0534r RR 12 12 13 on HC.docx